UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Michael A. Artis, Esquire
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Email: Michael.A.Artis@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| | : | |
| Steven A. Brown, | : | Case No. 24-22747 (ABA) |
| | : | |
| Defendant. | : | |
| | : | |
| | : | Adversary No. _____ |
| Andrew R. Vara, | : | |
| United States Trustee, | : | |
| | : | The Honorable Andrew B. Altenburg, Jr. |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Steven A. Brown, | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT OBJECTING TO DEFENDANT'S DISCHARGE**

Andrew R. Vara, the United States Trustee, Regions 3 & 9, by and through counsel, by way

of complaint objecting to the discharge of Steven A. Brown, respectfully alleges as follows:

**JURISDICTION AND VENUE**

1.    This is an adversary proceeding brought under 11 U.S.C. § 727 and Federal Rule of

Bankruptcy Procedure 7001(4).

1

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3.      This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A) and (J).

4.      Venue is proper pursuant to 28 U.S.C. § 1409.

5.      The United States Trustee has standing to bring this Complaint under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

6.      This Complaint is timely filed as the original deadline for filing a complaint objecting to discharge was ultimately extended by order of this Court pursuant to Federal Rule of Bankruptcy Procedure 4004(b) to May 18, 2026.

### THE PARTIES

7.      Andrew R. Vara ("Plaintiff" or "U.S. Trustee") is the United States Trustee for Regions 3 and 9, with a business address at the Office of the United States Trustee, One Newark Center, Suite 2100, Newark, New Jersey 07102.

8.      Steven A. Brown ("Defendant") is an individual with a place of residence at 114 N. Martindale Avenue, Ventnor City, New Jersey 08701.

### FACTUAL BACKGROUND

*Defendant's Current Chapter 7 Case*

9.      On December 30, 2024 ("Petition Date"), the Defendant, through counsel, filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code ("Bankruptcy Code").  The petition was filed without supporting schedules. Docket No. 1.

10.     On the signature page of the Petition, the Defendant signed below a statement declaring under the penalty of perjury that the information provided in the petition was true and correct.  *See* Docket No. 1, page 6.

2

11.     On December 31, 2024, Joseph D. Marchand, Esq., was appointed the chapter 7 trustee ("Case Trustee") and a meeting of creditors pursuant to 11 U.S.C. § 341(a) ("341 Meeting") was scheduled for February 14, 2025.  Docket No. 3.

12.     On January 20, 2025, the Defendant, through counsel, filed the missing supporting schedules.  *See* Docket No. 11.

13.     On April 22, 2025, the Defendant, through counsel, filed Amended schedule I and a summary of schedules.  *See* Docket No. 33.

**Defendant's Scheduled Assets and Liabilities in the Current Case**

14.     The Defendant filed Schedules and a Statement of Financial Affairs ("SOFA") with the Petition, as well as a Chapter 7 Statement of Current Monthly Income.

15.     On the Petition, the Defendant disclosed that his debts were primarily business debts. *See* Docket No. 1, at page 6, ¶ 16b.

16.     On Schedule A/B, the Defendant disclosed his 50% interest in a real property located at 6455 Clearview Street, Philadelphia, PA, which he valued at $112,500.00 and indicated that only he had an interest in the Residence. *See id*. at page 10, ¶ 1.

17.     On Schedule A/B, the Defendant disclosed his 100% interest in a 2015 Maserati Quattroporte, valued at $16,800.00 and his 50% interest in a 2020 Dodge Ram Promaster Cargo Van 1500, valued at $20,582.00. *See* Docket No. 11, at page 4, ¶ 3.

18.     On Schedule A/B, the Defendant disclosed his interest in "household goods and furnishings" valued at $3,000.00.  *See* Docket No. 11, at page 4, ¶ 6.

19.     On Schedule A/B, the Defendant disclosed his interest in "electronics" valued at $2,900.00.  *See* Docket No. 11, at page 4, ¶ 7.

20.    On Schedule A/B, the Defendant disclosed his interest in "equipment for sports and hobbies" valued at $900.00. *See* Docket No. 11, at page 5, ¶ 9.

21.    On Schedule A/B, the Defendant disclosed his interest in a "firearm" valued at $375.00.  *See* Docket No. 11, at page 5, ¶ 10.

22.    On Schedule A/B, the Defendant disclosed his interest in "clothes" valued at $3,000.00. *See* Docket No. 11, at page 5, ¶ 11.

23.    On Schedule A/B, the Defendant disclosed his interest in "jewelry" valued at $650.00. *See* Docket No. 11, at page 5, ¶ 12.

24.    On Schedule A/B, the Defendant disclosed his interest in a "non-farm animal" valued at $0.00.  *See* Docket No. 11, at page 5, ¶ 13.

25.    On Schedule A/B, the Defendant disclosed his interest in a "…health aid…" valued at $100.00.  *See* Docket No. 11, at page 5, ¶ 14.

26.    On Schedule A/B, the Defendant disclosed his interest in "deposits of money" comprised of the following:

| Bank Accounts | Value |
| --- | --- |
| Chime Bank Checking Account | $24.46 |
| Chime Bank Savings Account | $3.54 |
| Chase Bank Checking Account | $0.02 |
| Cash App Account | $232.91 |
| Paypal Account | $0.27 |
| Paypal Savings Account | $0.75 |
| Venmo Account | $0.00 |
| Santander Bank Account | $42.77 |

| | |
|---|---|
| Cash App Savings Account | $27.14 |
| Capital One Checking Account | $11.11 |
| Capital One Savings Account | $1.13 |

*See* Docket No. 11, at page 6, ¶ 17.

27. On Schedule A/B, the Defendant disclosed his interest in "Bonds, mutual funds, or publicly traded stocks," comprised of a Merrill Lynch - Ede account valued at $0.16; a Merrill Lynch - CMA account valued at $0.01; and Cash App Investing, LLC valued at $29.79. *See* Docket No. 11, at page 6, ¶ 18.

28. On Schedule A/B, in response to the directive to list his interest in "non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture," the Defendant listed the following Limited Liability Companies and business interests valued as follows:

| Businesses | Ownership Interest | Value |
|---|---|---|
| Three Eye Research, LLC | 100% | $0.00 |
| Pro Hospitality Services, LLC | 100% | $0.00 |
| Vida Property Management Group, LLC | 100% | $0.00 |
| OJO Properties, LP | 100% | $0.00 |
| Vista Properties, LLC | 100% | $0.00 |
| Urban Living, LLC | 100% | $0.00 |
| Urban Living 2, LLC | 100% | $0.00 |
| Urban Living 3, LLC | 100% | $0.00 |
| Urban Living 4, LLC | 100% | $0.00 |

| | | |
|---|---|---|
| Urban Living 5, LLC | 100% | $0.00 |
| Urban Living 6, LLC | 100% | $0.00 |
| Urban Living 7, LLC | 100% | $0.00 |
| Urban Living 8, LLC | 100% | $0.00 |
| Urban Living 9, LLC | 100% | $0.00 |
| Urban Living 10, LLC | 100% | $0.00 |
| Vida Property 1, LLC | 100% | $0.00 |
| Vida Property 2, LLC | 100% | $0.00 |
| Vida Property 3, LLC | 100% | $0.00 |
| Vida Property 4, LLC | 100% | $0.00 |
| South Side Development Group, LLC | 100% | $0.00 |
| Brown Family Holdings | 100% | $0.00 |
| Three Eye, LLC | 100% | $0.00 |
| Vida Venture Fund | 100% | $0.00 |

*See* Docket No. 11, at page 7-8, ¶ 19.

29.     On Schedule A/B, the Defendant disclosed his interest in a "retirement or pension accounts" with Charles Schwab valued at "unknown". *See* Docket No. 11, at page 8, ¶ 21.

30.     On Schedule A/B, the Defendant disclosed his interest in a "Merril Lynch 529 Account" valued at "$1,739.01". *See* Docket No. 11, at page 8, ¶ 24.

31.     On Schedule A/B, in response to the directive to list "family support," the Defendant answered "No." *See* Docket No. 11, at page 8, ¶ 29.

32.     On Schedule A/B, in response to the directive to list "other amounts someone owes you," The Defendant listed the following: (i) allowed proof of claim in the amount of $327,996.28

in the pending chapter 11 case of Diane M. Meltzer[NJ 22-19248 (ABA)] valued at "unknown" and (ii) Rents and profits owed by co-owner (Jesse Raines) of 6455 Clearview Street valued at "unknown". *See* Docket No. 11, at page 8, ¶ 30.

33.   On Schedule A/B, in response to the directive to list "any financial assets you did not already list," the Defendant answered "No."  *See* Docket No. 11, at page 8, ¶ 35.

34.   On Schedule D, the Defendant disclosed three secured claims in favor of: (i) 2020 Dodge Ram Promaster Cargo Van 1500, secured by Ally Financial, in the amount of $19,371.98; (ii) a disputed judgement lien, secured by Jill Belinsky in the amount of $1,485,380.00 and (iii) the Non-residential Property located at 6455 Clearview Street, Philadelphia, PA, secured by PHH Mortgage Services  in the amount of $124,221.00 all of which are owed by only the Defendant. *See* Docket No. 11, at pages 14-15.

35.   On Schedule E/F, the Defendant disclosed a priority unsecured claim to Robin Brown categorized as Domestic Support totaling $237,330.75.  *See* Docket No. 11, at page 16.

36.   On Schedule E/F, the Defendant disclosed non-priority general unsecured claims totaling $2,755,209.74.  *See* Docket No. 11, at page 34, ¶ 6j.

37.   On Schedule E/F, the Defendant disclosed non-priority general unsecured claims mostly attributable to credit card and business-related obligations with the exception of the following claims to individuals:

i)   Chelsea Downs in the amount of $190,000.00

ii)   Cheryl Eisbit in the amount of $28,000.00

iii) Caniel Simpson and Debasree Saha-Simpson listed as an unknown liability

iv)  Donna Brown in the amount of $3,000.00

v)   Jill Belinsky in the amount of $1,485,380.00

vi) Matt Lenza in the amount of $90,000.00

*See* Docket No. 11, at pages 22 at ¶ 4.17 and ¶ 4.18; 24 at ¶ 4.22; 25 at ¶ 4.25; and 26 at    ¶ 4.28 and ¶ 4.30.

38.     Additionally, on Schedule E/F, the Defendant included the following claims, among others: (i) Silverang, Rosenzweig & Haltzman, LLC in the amount of $140,893.81 with the annotation of "Business debt – Three Eye litigation, Blue Sky, LLC litigation"; and (ii) Small Business Administration with an unknown amount with the annotation " Business Debt". *See* Docket No. 11, at pages 29 at ¶ 4.39 and 30, at ¶ 4.40.

39.     On Schedule G, the Defendant listed the following executory contracts and unexpired lease: (i) **a** Residential lease at 114 Martindale Avenue, Ventnor, NJ with Morpheus One, LLC, and (ii) a purchase option to buy 114 Martindale Avenue, Ventnor, NJ from Morpheus One, LLC.  *See* Docket No. 11, at page 35.

40.     On Schedule H, the Defendant identified the following co-Defendants OJO properties, LP; Southside Development Group, LLC; Urban Living 10, LLC; Urban Living 2, LLC; Urban Living 3, LLC; Urban Living 4, LLC; Urban Living 5, LLC; Urban Living 6, LLC; Urban Living 7, LLC; Urban Living 8, LLC; Urban Living 9, LLC; Urban Living, LLC; Vida Property 1, LLC; Vida Property 2, LLC; Vida Property 3, LLC; Vida Property 4, LLC; Vida Property Management Group, LLC; and Vista Properties, LLC ("the co-Defendants") on certain claims. The Defendant did not identify specific creditors for the co-Defendants.  *See* Docket No. 11, at pages 36-38, ¶ 3.

41.     On Schedule I, the Defendant disclosed that he was employed by Three Eye Research, LLC ("Three Eye").  *See* Docket No. 11, at page 39, ¶ 1.

42.      On Schedule I, the Defendant disclosed gross income of $3,000.00 per month from Three Eye, less $1,054.50 in Taxes, Medicare and Social Security deductions resulting in a net monthly income of $1,945.50. The Defendant further disclosed other monthly income from "Loans and contributions from friends and family" in the amount of $4,694.00. The Defendant disclosed a combined monthly income of $6,639.50. *See* Docket No. 11, at pages 39-40, at ¶12.

43.      In response to the question on Schedule I, "Do you expect an increase or decrease within the year after you file this form?", the Defendant answered "Yes: Defendant is actively pursuing a permanent position." *See* Docket No. 11, at page 40, ¶13.

44.      On the Amended Schedule I, filed on April 22, 2025, the Defendant disclosed that he was employed by Letgo Healthcare, LLC, grossing $3,000.00 per month, less $1,054.50 in Taxes, Medicare and Social Security deductions resulting in a net monthly income of $1,945.50. The Defendant further disclosed other monthly income from "Loans and contributions from friends and family" in the amount of $4,694.00. The Defendant disclosed a combined monthly income of $6,639.50. *See* Docket No. 33, at pages,1-2.

45.      On Schedule J, the Defendant disclosed that he had monthly household expenses totaling $6,860.82. *See* Docket No. 11, at page 42, ¶ 22.

46.      In response to the question on Schedule J at ¶ 24, "Do you expect an increase or decrease in your expenses within the year after you file this form?", the Defendant answered "no." *See* Docket No. 11, at page 42, ¶ 24.

47.      The Defendant signed a declaration under penalty of perjury stating that the information in his schedules is true and correct. *See* Docket No. 11, at page 43.

48. On the SOFA, the Defendant disclosed $18,000.00 from operating a business through the Petition Date; $240,123.12 for the calendar year of 2023; and "unknown" for the calendar year of 2022. *See* Docket No. 11, at page 44, ¶ 4.

49. On the SOFA, the Defendant disclosed $68,406.00 from contributions from friends and family through the Petition Date; $26,173.88 from contributions from friends and family for the calendar year of 2023; and an "unknown" amount for 2022 from other source of income. *See* Docket No. 11, at page 45, ¶ 5.

50. On the SOFA, the Defendant disclosed that he had multiple judgments, lawsuits and adversary proceedings entered against him, including, but not limited to, the following: (**a**) Bank of America, NA, DC00418423, with judgment in the amount of $-11,215.00; (**b**) Bank of America, NA, DC00418523 with judgment in the amount of $-8,286.00; (**c**) Internal Revenue Services Case No. 2020036130, with a federal tax lien in the amount of $-38,102.00; (**d**) Citizens Bank, NA v. Three Eye Research, LLC, et al., Case No. 220902426; (**e**) Scott & Linda Currie v. Steven Brown, et al.; (**f**) Belinsky, Jill v. Steven Brown, Case No. 210901569; (**g**) Simpson, et al. v. Brown et al.; (**h**) Blue Sky, LLC v. Brown, Case No. 2021-07017; (**i**) Meltzer v. Brown, Case No. L2169-21; (**j**) Discover Bank v. Steven Brown, Case No. DC-000704-23; (**k**) Silverang, et al v. Brown, Case No. 2023-05870; (**l**) Three Eye Research, et al. v. Meltzer, Adv. Pro. No. 23-1072. *See* Docket No. 11, at page 46-47, ¶ 9.

51. On the SOFA, the Defendant disclosed that an "unknown" amount was levied from his Santander Bank account by the creditor, Jill Belinsky and that miscellaneous personal property in Award Storage facility, valued at $0.00 was seized or levied. *See* Docket No. 11, at page 47-48, ¶ 10.

10

52.      On the SOFA, the Defendant disclosed that he did not incur any losses from fire, theft, other disaster, or gambling.  *See* Docket No. 11, at page 48, ¶ 15.

53.      On the SOFA, in response to question number 18, "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs," the Defendant disclosed that he prepaid rent to Morpheus One, LLC, in the amount of $150,000.00 for a 3 year lease dated 8/1/2023.  *See* Docket No. 11, at page 49, ¶ 18.

54.      On the SOFA, in response to the question number 27, "within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business," the Defendant disclosed the following:

| Business Names | EIN: | Date Businesses Existed |
|---|---|---|
| Three Eye Research, LLC | 46-4485328 | 1/10/13 - present |
| Pro Hospitality Services, LLC | 46-3952629 | 10/24/13 - present |
| Vida Property Management Group, LLC | 83-2517918 | 11/14/18 - present |
| OJO Properties, LP | 47-5300248 | 10/13/15 - present |
| Vista Properties, LLC | undisclosed | undisclosed |
| Urban Living, LLC | 81-4537914 | 11/29/16 – present |
| Urban Living 2, LLC | 81-5317643 | 2/10/17 – present |
| Urban Living 3, LLC | 82-1548856 | 5/16/17 – present |
| Urban Living 4, LLC | 82-2393376 | 8/17/17 – present |
| Urban Living 5, LLC | 82-3534484 | 11/29/17 – present |
| Urban Living 6, LLC | 82-3668873 | 12/12/27 – present |
| Urban Living 7, LLC | 82-4146960 | 2/1/28 – present |

11

| Urban Living 8, LLC | 82-4784684 | 3/14/18 – present |
|---|---|---|
| Urban Living 9, LLC | 82-5362849 | 4/30/18 – present |
| Urban Living 10, LLC | 82-5401819 | 5/2/18 – present |
| Vida Property 1, LLC | 83-4057363 | 3/20/19 – present |
| Vida Property 2, LLC | 85-1220946 | 5/29/20 – present |
| Vida Property 3, LLC | 85-148657 | 7/17/20 – present |
| Vida Property 4, LLC | 85-4269250 | 12/17/20 – present |
| South Side Development Group, LLC | 83-3697666 | 2/25/19 – present |
| Brown Family Holdings | 87-1665915 | 7/14/21 – present |

Each entity was created to sell a particular piece of property. *See* Docket No. 11, at pages 51-52, ¶ 27.

55.     The Defendant signed a declaration under penalty of perjury that the information contained in the SOFA was true and correct. *See* Docket No. 11, at page 53.

56.     The Defendant filed a Chapter 7 Statement of Your Current Monthly Income ("Statement of Current Monthly Income") in which he stated that during the six months preceding the filing of the petition, he had no income from any source. *See* Docket No. 11, at pages 56-58.

57.     The Defendant signed the declaration at the end of the Statement of Current Monthly Income stating, under the penalty of perjury, that the information contained therein was true and correct. *See* Docket No. 11, at page 57.

**Defendant's Testimony at the 341 Meeting**

58.     The Case Trustee  conducted the first scheduled meeting of creditor held pursuant to § 341(a) (the "341 Meeting") on February 14, 2025.

12

59. Because the Defendant failed to produce the requested documents to the Case Trustee, two supplemental 341 Meetings were conducted on April 30, 2025, and June 20, 2025.

60. At the 341 Meeting, the Defendant testified that the information contained in the petition was true and correct.

61. The Defendant testified that he owned 6455 Clearview Street in Philadelphia, PA which is being rented to a tenant. The Case Trustee requested a copy of the Deed, mortgage, a CMA and lease agreement.

62. The Defendant testified he previously owned the property where he currently lives at 114 Martindale Avenue, Ventnor, NJ ("Ventnor Property").

63. The Defendant testified that Jennifer Gilmore lent him money for the purchase of the Ventnor Property along with other friends that were just trying to help him out.

64. The Defendant further testified that he leases the Ventnor Property with a verbal lease with an option to buy and does not have a physical contract.

65. The Defendant further testified that he pre-paid $150,000 for a 36-month lease with respect to the Ventnor Property.

66. The Defendant testified that the purchaser of the Ventnor Property was Morpheus One, LLC, an entity owned by Jaime Giacobbe.

67. The Defendant testified that he had no relationship to the owner of Morpheus One, LLC but has had various dealings with them.

68. The Defendant further testified that he owns the businesses listed on paragraph 27 of the SOFA, and each business was created as a separate entity for the purpose of buying depressed properties and building and/or "flipping" homes.

69. The Defendant further testified throughout the course of 3-4 years some of those properties were bought and sold and never closed due to financial difficulties and were empty shells.

70. The case trustee requested additional supporting documents for all the businesses.

71. The Defendant further testified that Three Eye is a consumer insight research marketing company and he no longer draws a salary from it due to Meltzer case.

72. The Defendant testified that Meltzer was his girlfriend and his number two employee.

73. The Defendant testified he had a legal dispute with Meltzer who allegedly stole some money and as a result, several projects were not completed.

74. The Defendant testified that the $3,000 he reported as gross income on Schedule I is not income, but are funds provided for one project to develop a website.

75. The Defendant further testified that the money comes in and he gives the money to sub-contractors and he hopes to get some money on the  project in the future.

76. The Case Trustee requested an explanation regarding the project and income.

77. The Defendant also testified that he has not filed tax returns since 2020.

78. The Defendant further testified that he has no right to sue anyone for any reason, and he has no malpractice or personal injury claims.

79. Additionally, the Defendant testified Covid destroyed his business, a contractor defrauded him, and his girlfriend stole funds and customers from Three Eye.

80. The Defendant provided the Case Trustee with a self-prepared document titled "incoming funds" reflecting monies given to the Defendant from friends that were just trying to help him out and did not expect to be repaid.

81. The Case Trustee requested an itemization of all parties, loans, itemized repayment statuses and gifts, listed on the "incoming funds" document.

82. On March 31, 2025, the Case Trustee held a supplemental 341 Meeting to understand what properties are owned or controlled by the Defendant through his various businesses.

83. The Defendant testified that he had a self-prepared excel spreadsheet that explains all the corporations he owned and controlled.

84. The Case Trustee stated that he was not in possession of the excel spreadsheet and requested a copy.

85. The Defendant testified that he owns no other real estate.

86. The Defendant testified that no records exist for the various corporations.

87. The Defendant testified that documents regarding his businesses were destroyed by Meltzer.

88. The Case Trustee requested all for documents to substantiate the destroyed records.

89. Defendant testified he did not use a real estate broker to sell any of the properties.

90. The Case Trustee requested copies of all HUD 1 Statements for all Properties sold by the Defendant.

***Case Trustee Referral***

91. On July 1, 2025, the Case Trustee referred the Defendant's case to the United States Trustee for abuse under 11 U.S.C. § 727.

92. The Case Truste reported numerous concerns regarding the Defendant's statements disclosed in his petition and his testimony at the various 341 Meetings and detailed in a letter to the Defendant dated June 20, 2025,  specifically, the Defendant:

(a) failed to explain why 2 payments were made on September 13, 2023 to an entity known as Magli Service, LLC which totaled $80,000.00.

(b) could not account for why there was a withdrawal totaling $32,500.00 between August 1, 2023-August 30, 2023, from Chase Account ending in 554.

(c) could not account for withdrawals totaling $36,000.00 between September 1,2023-September 30, 2023, from Chase Account ending in 554.

(d) could not explain all Zelle payments made on attached Chase Bank account ending in 554.

(e) could not account for withdrawal of $5,628.96 from Chase Account ending with 8726.

(f) failed to list a lawsuit/judgment that the Defendant obtained against a party who is currently in jail.

(g) failed to provide the name and address of the Check Cashing business in Philadelphia wherein Mr. Brown indicated he cashed the $175,000.00 deposit & any documentation of check cashing event.

(h) failed to provide a copy of any of the alleged violations as asserted by the City of Ventnor regarding the Ventnor Property & documentation of corrections with paid invoices and approval by the City of Ventnor.

***Defendant's Responses to Case Trustee June 20, 2025 Correspondence***

93.     In response to the Case Trustee's June 20, 2025, letter, the Defendant provided the following explanations:

a.      **Provide an explanation of the 2 payments on 9/13/23 totaling $80,000.00 paid toMagli Services, LLC. Provide copies of invoices, bills, etc.** *Proceeds from the sale of one of my properties got deposited into my Chase Acct and I wired it to Magli Services, LLC the check cashing company. I didn't feel comfortable leaving money in the Chase account. I have no bills or invoices.*

b.      **Regarding the withdrawal of $32,200.00 between 8/1/23-8/30/23 from the ChaseAccount ending with 554, provide an accounting on same i.e. bills, invoices, etc.** *Proceeds from the sale of one of my properties got deposited into my Chase Acct. I didn't feel comfortable leaving money in the Chase account. I have no bills or invoices. Payments went to contractors and living expenses*

c.      **Regarding the withdrawal of $36,000.00 between 9/1/23-9/30/23 from the Chase Account ending with 554, provide an accounting on same i.e. bills, invoices, etc.** *Proceeds from the sale of one of my properties got deposited into my Chase Acct. I didn't feel comfortable leaving money in the Chase account. I have no bills or invoices. Payments went to contractors and living expenses*

16

d. **Regarding the Chase Bank Account ending with 554 provide an explanation for all the Zelle payments made on the attached bank statements.** *Jose Sanchez Painter, Herberto Lanuz Plumber, Nena Lanuz plumber's helper*

e. **Provide the name and address of the Check Cashing business in Philadelphia wherein Mr. Brown indicated he cashed the $175,000.00 deposit & any documentation of check cashing event.** *The amount was approx. 80K, I made a mistake at the last Trustee meeting, there was never a check for 175k cashed. Magli Services, LLC (Check Cashing) 8008 Route 130 Delran NJ 08075 and I Untied Check Cashing, 115 South Street Phila PA 19147. I have no invoices or bills.*

f. **Provide the reason for the withdrawal on 10/31/23 in the amount of $5,628.96 from the Chase Bank Account ending with 8726, include a copy of any bill, invoice, etc.** *This was a court order hold/ withdraw from the account. I believe Belinsky action against me received the funds.*

***The U.S. Trustee's Investigation and Subpoena***

94. The U.S. Trustee reviewed the Defendant's petition, schedules, SOFA, and the testimony from the three 341 Meeting testimony and determined that more information was needed to help evaluate whether it would be an abuse of chapter 7 for the Defendant to continue in bankruptcy and receive a discharge.

95. In additional, the U.S. Trustee reviewed the documents provided from the Case Trustee.

96. The U.S. Trustee reviewed the adversary complaint and exhibits, answer to complaint with counterclaim and exhibits, and stipulation of dismissal for the Chapter 11 case of Diana M. Meltzer ("Meltzer"), Case No.22-19248 (ABA), ("Meltzer adversary complaint"), referenced in the Defendant's SOFA.

97. The Meltzer adversary complaint was filed by the Defendant and sought non-dischargeablity of certain claims that the Defendant alleged against Meltzer who shared a long-standing romantic relationship with the Defendant and was also a former officer and employee of Three Eye, and such allegations included, and were not limited to claims that Meltzer: (1) withdrew $195,000 from Three Eye bank accounts; (2) took action which prevented Brown from accessing

17

Three Eye's and his personal bank accounts through a personal online portal; (3) revoked Brown's access to his cloud based Microsoft 365 account; (4) prevented Brown and others from accessing Three Eye's company records, historical data, as well as proprietary information; and (5) deleted Three Eye's Company website, among other allegations.

98. Meltzer filed an answer and counterclaim and specifically alleged that: (1) the Defendant formed without her knowledge the entity Applied Research Analysis LLC and transferred approximately $600,000 from a Three Eye's project in Latin America into an account he controlled, for his personal benefit; (2) the Defendant transferred and commingled funds from Three Eye's into other accounts owned by his property "flipping companies; (3) the Defendant prevented Meltzer from accessing financial records; (4) that the Defendant obtained PPP Loans from the federal government and an SBA loan through his Three Eye's and diverted the funds for his personal use without her knowledge; (5) that the Defendant failed to pay Meltzer her claimed the wages; (6) that the Defendant exerted a campaign of harassment, intimidation, and threats against Meltzer; and (7) the Defendant deprived Meltzer of certain sums of money exceeding $100,000, among other allegations.

99. The Meltzer answer and counterclaim attached an exhibit from a Superior Court of New Jersey, Report of Award of Arbitration that made certain findings that: (1) there was no lost wage claim (2) Meltzer was found liable to the Defendant for missing personal property items taken from the home that Meltzer and the Defendant cohabitated and these items consisted of Rolex watches, a coin collection, a passport, a birth certificate, and other items valued in the amount of $327,996.28.

100. The Docket in the Meltzer adversary proceeding also reflects the parties executed a Confidential Settlement Agreement and Release dated August 4, 2023.

18

101.     On September 19, 2023, a Stipulation of Dismissal was executed by the parties closing the Meltzer adversary proceeding.

102.     On February 6, 2026, pursuant to D.N.J. LBR 2004-1(b) and (c), the U.S. Trustee issued to the Defendant, through counsel, a Subpoena to Produce Documents. ("Document Subpoena") requesting that documents listed in Exhibit A to the Subpoena be produced on or before February 20, 2025.

103.     Exhibit A to the Document Subpoena sought, among other things: (1) All documents related to the Defendant's income or other evidence of income received by the Defendant for services provided to Three Eyes, Pro Hospitality Services, LLC, Letgo Healthcare LLC, or from any other source; (2) all documents supporting estimated monthly expenses; (3) all documents which will identify the names and addresses of all individuals who provided "loans and contributions" to the Defendant; (4) All federal and state income tax returns; (5) all financial statements books and records for all businesses owned and controlled by the Defendant; (6) all documents that relate to transfers to and from any financial accounts; (7) all business formation documents; (8) all bank statements, canceled checks, check registers, or other evidence of the transfer of funds into and out of any personal and business bank accounts; (8) all real or personal property leases to which the Defendant was a party; (9) all deeds or other documents that reflect the Defendants legal or equitable interests in any real property; (10) all documents that reflect the defendant's name on any tax records; (11) all documents relating to the Defendant's request for relief under the paycheck protection program; (12) all documents relating to any SBA loans; (13) all documents relating to ownership of motor vehicles; and (14) all documents relating to any domestic support obligations.

104.    On February 20, 2026, the Defendant, through counsel, produced various documents in  response to the Document Subpoena.

105.    The Defendant produced a self-prepared  two-page computer generated spreadsheet that purported to document the funds the Defendant received from certain individuals that provided money to the Defendant during the calendar year of 2023 and 2024, and specifically listed the name of the person, the amount of money, the month, the year, and upon information and belief the account which was identified by either "Santander", "CashApp, or "Venmo", with no account numbers, addresses, or any other identifying information for these transactions.

106.    The Defendant produced a self-prepared one-page document which provided an explanation regarding the source of funds for the Ventnor Property rental deposit:

> The $175,000 deposit from Morpheus, the buyer of my home.  This amount is reflected on the closing statement/ ALTA, along with the $39,232 payment made at the closing that should help clarify where the funds came from. I believe I cashed the $175,000 check instead of depositing it which is why it won't match up with the bank deposit.

107.    The Defendant produced account statements for years 2024 and 2023 from a Charles Schwab investment account ending in #1481, in the name of "Steven BrownTTEE/3Eye Cash Balance Defined Benefit Plan, which he previously identified on Schedules A/B in support of his petition.

108.    While the Defendant's Schedule A/B listed the value of the Charles Schwab investment account ending in #1481, in an unknown amount,  the Charles Schwab account statement for the period October1- October 31, 2024 reported an ending balance of $596,777.69.

109.    The Defendant produced a September 3, 2015, New Jersey Business Gateway Business Entity Report for Three Eye research LLC, which reflected Three Eye, is an active

20

domestic limited liability company, that the Defendant is the president, that the last annual report was January 1, 2015.

110.    The Defendant produced various bank statements for a Santander checking account ending in # 1443, during 2023 and 2024.

111.    The Defendant also produced various bank statements for a Chase checking account in the name of VIDA Property 2 LLC/Steven Alan Brown, ending in # 4554.

112.    The Defendant produced a one-page spreadsheet that purported to show all real property that was held in the name of Defendant or a limited liability company owned or controlled by the Defendant and whether the property was sold or foreclosed.

***The Defendant's Testimony at the Rule 2004 Examination***

113.    On March 26, 2026,  the U.S. Trustee conducted an examination of Defendant pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004 Examination").

114.    The Defendant testified under oath at the Rule 2004 Examination that he filed his petition on December 24, 2024, that he read it over before he signed, and the information contained in the petition, schedules, and SOFA was true and accurate.

115.    The Defendant testified that he attended Adelphi University and has a bachelor's degree in communications and has received further training in analytics and marketing.

116.    The Defendant testified that he attended Adelphi University and has a bachelor's degree in communications and has received further training in analytics and marketing.

117.    The Defendant testified that he was divorced and has three adult children.

118.    The Defendant testified he previously had an obligation to provide alimony and child support but this obligation ended and was only required to pay a portion of his youngest daughter's college expenses but could not fulfill this obligation due to the lack of funds.

21

119.    The Defendant testified he owned a 50% interest in a rental property in Philadelphia that he purchased about five years ago but he stopped being involved with the management of the property because he and the co-owner do not like each other.

120.    The Defendant testified he "didn't remember" the co-owner's name, and he knew nothing about the status of the mortgage on the property, and whether any rents were being collected.

121.    The Defendant testified he previously owned the Ventnor Property where he currently lives but sold the property approximately two and a half years ago for $700,000 to Morpheus One, LLC, which is an entity owned by a friend, Jamie Giacobbe.

122.    The Defendant further testified that at the time he sold the property to Morpheus One, he had equity in the property but could not recall the exact amount.

123.    The Defendant further testified as part of this same transaction, he entered into a three-year residential lease with Morpheus One from the sale date which enabled the Defendant to continue to reside in the Ventnor Property in exchange for the payment of $150,000.

124.    The Defendant also testified that at the closing of the sale of the Ventnor Property he received $175,000 in proceeds from Morpheus One in connection with the sale that he converted to cash through a check cashing business.

125.    The Defendant testified that he took the $175,000 check to a check cashing place as opposed to a bank because: "A lot of my accounts were frozen or they, you know, like just because the creditors were coming after me."  Defendant further stated: "And I didn't want to lose control of the money."

126.    The Defendant further contradicted his earlier testimony and further testified Magley Services, LLC, was the "check casher" and that he never went to a check cashing

22

business and that Magley Services, LLC "met [him] somewhere in Philadelphia" and he gave them the check and they cashed it.

127. The Defendant further testified: "I don't know if – I don't recall having a receipt. I just recall them – me giving them the check.  And then I had to get the money after the checks cleared."

128. The Defendant further testified he had no records of any kind from Magley Services LLC.

129. When questioned about documents that were provided by the Defendant to the chapter 7 trustee, the Defendant contradicted his earlier testimony and stated: "The amount was approximately 80,000. I made a mistake at the last Trustee meeting. There was never a check for 175,000 cash."

130. The Defendant testified that he was in the business of putting together deals which he characterized as, "knock-down houses or lots and properties in South Philadelphia" where he would buy a lot and build a new house and borrow the money to build the house from short-term construction loans.

131. The Defendant testified he filed for chapter 7 because: "COVID hit, which caused substantial delays, which made me violate all my construction contracts on the delivery date."

132. The Defendant also testified around this same time, he broke up with his  girlfriend of whom he was living with and she emptied his business and personal checking account and sued him.

133. The Defendant also testified that the girlfriend deleted all his financial records, and he literally lost all records, all email, and she stole his money.

134.	The Defendant testified he filed court proceedings against the girlfriend and won a judgment against her but will never collect anything because she went bankrupt.

135.	The Defendant also testified that he had problems with a subcontractor he hired to manage his construction projects and the subcontractor defrauded him and went to jail.

136.	The Defendant testified that the company who mismanaged his projects was called "TLC something" and the subcontractor was named "Vincent Cottrell."

137.	The Defendant further testified: "But in my documents he was Vincent Edwards, which wasn't a real name."

138.	The Defendant testified he is the sole owner of Three Eye, which was formed in 2013 and is a marketing company that does qualitative and quantitative market research and strategy, and that the Defendant operates the business from his home.

139.	The Defendant testified that he initially reported on Schedule I that his employer was Three Eye and he received gross wages of $3,000 per month, but this was inaccurate and the $3,000 per month in gross wages that he received as of the petition date was from Letgo Healthcare, LLC ("Letgo").

140.	The Defendant testified he did not own Letgo and this business is owned by two doctors that hired him to build an on-line platform.

141.	The Defendant testified he never received a check from Letgo and that Letgo sends him payments from time to time directly into his personal Venmo account.

142.	The Defendant further testified he did not actually do the work for the services he performed for Letgo and that he hired developers and creative people to do the work and he just managed the project.

143.	The Defendant testified he has no formal documentation with Letgo.

144.    The Defendant testified that he had a budget with Letgo for approximately $457,000 and he has billed "maybe 50 or 60,000."

145.    The Defendant testified that the payroll deductions that he reported on Schedule I for Tax, Medicare and Social Security deductions were "based on my liability of those expenses on the $3,000 to the government, Medicare, Social Security and so on for them."

146.     The Defendant testified he didn't believe he owed any money to the government because from the amount of his losses "he believed" he was due  a  carry forward tax credit so he hasn't been paying anything at this point.

147.    The Defendant testified he has not filed a tax return in quite some time, maybe four or five years, and further stated he may have filed partially in 2019.

148.    The Defendant further testified that this has been a chaotic time in his life as all his records were deleted and erased and that there was not a single record and that the cost associated with building all these years of records is a significant cost and he doesn't have the funds.

149.    The Defendant testified that the various entities that he reported on Schedule A/B were foreclosed upon and that there's nothing in any of these entities and they're all insolvent LLC's.

150.    The Defendant testified that in 2016, Three Eyes borrowed $1,000,000 pursuant to a U.S. Small Business Administration Loan ("One Million SBA Loan"), and that he acknowledged that he signed the note as the managing member of Three Eyes.

151.    The Defendant testified he thought the One Million SBA Loan for Three Eyes  was to restructure some debt.

152.    The Defendant testified he did not recall how he received the One Million SBA Loan but stated: "I imagine in the bank account, one of my accounts."

25

153.   The Defendant further testified he did not recall the financial institution that received the One Million SBA Loan proceeds.

154.   The Defendant also testified that his former girlfriend, Diana Melter, destroyed the One Million SBA Loan records.

155.   The Defendant also testified that he received over $240,000 in distributions in year 2023 and he didn't know the source of the funds or the specific bank account that received the distributions.

156.   The Defendant also testified he was making "anywhere from 300 to $800,000 over the years" and for many years he "was making a million dollars a year for a lot of years."

## FIRST COUNT

**OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(3) FOR CONCEALING, DESTROYING, MUTILATING, FALSIFYING, OR FAILING TO KEEP OR PRESERVE RECORDED INFORMATION, INCLUDING BOOKS, RECORDS, AND PAPERS, FROM WHICH THE DEFENDANT'S FINANCIAL CONDITION OR BUSINESS TRANSACTIONS MIGHT BE ASCERTAINED**

157.   The U.S. Trustee repeats and realleges each and every allegation contained in paragraphs 1 through 156 as if set forth herein at length.

158.   Pursuant to 11 U.S.C. § 727(a)(3), the Court may withhold a Defendant's discharge where "the Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Defendant's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

159.   The Defendant is a sophisticated businessman that has operated several business entities over several years.

26

160.    The Defendant has received payments from various individuals, received payments through various business entities he owned and controlled, and received distributions through his various business entities.

161.    On Schedule I, filed in support of his petition, the Defendant initially disclosed that he was employed by Three Eye Research, LLC, and received a gross income of $3,000.00 per month, less $1,054.50 in Taxes, Medicare and Social Security deductions resulting in a net monthly income of $1,945.50.

162.    The Defendant subsequently amended his Schedule I to identify he was employed by Letgo Healthcare, LLC with the identical amounts that he initially reported he received for gross income and payroll deductions through Three Eye Research, LLC.

163     he Defendant also  reports on his amended Schedule I that he receives other income that he specified as: "Loans and contributions from friends and family" in the amount of $4,694.00 per month.

164.    When questioned at to whether he had records to support the gross wages and  payroll deductions he reported on Schedule I, the Defendant stated he had no records except for a spreadsheet he prepared that identified payments he received through his Venmo account from individuals who sent him payments for work he did through Three Eye Research, LLC.

165.    The Defendant received at least $175,000 in sales proceeds from the purchaser of the Ventnor Property and he failed to produce adequate records which would account for the proceeds he received in connection with the sale, which the Defendant states were converted to cash.

166.    The Defendant initially testified he cashed a $175,000 check at a check cashing business in Philadelphia, and then contradicted his earlier testimony by stating the check he cashed

was approximately $80,000, and there was never a check for $175,000 and he did not have any records or invoices to document the transaction.

167.    The Defendant, through his business Three Eye Research, LLC, for which he was the managing member and sole owner authorized the company to receive a $1,000,000 Small Business Administration Loan for which the Defendant has not produced business records and other documents which would explain the disposition of the loan proceeds.

168.    The Defendant received several thousands of dollars through the buying and selling of real properties through the various business entities he owned and controlled.

169.    The Defendants' interest in numerous business entities, his control over numerous bank accounts, and the complexity of his financial transactions obligates the Defendant to maintain adequate records of his financial condition and business transactions.

170.    The Defendant failed to produce adequate records in response to the Subpoena issued by the U.S. Trustee and in response to document requests from the chapter 7 trustee.

171.    The Defendant failed to keep and preserve business records for most of the Business Entities.

172.    The Defendant has produced limited business records and claims most of his business records were destroyed by a former girlfriend.

173.    The Defendant also claimed without producing any documentation that a sub-contractor stole substantial funds from him and his business entities.

174.    The Defendant has not filed tax returns over the past five years and despite receiving over $240,000 in distributions in the year prior to the filing he made no effort to prepare  tax returns, profit and loss statements, and other business records which would explain his current financial condition.

175. The Defendant's failure to produce complete books and records has made it impossible for the Plaintiff to determine whether Defendant or the Business Entities have any assets, inventory, or income remaining from the various operations.

176. The Defendant's failure to produce books and records of his business transactions, and his failure to produce books and records of his personal affairs is unreasonable and unjustifiable given the complexity and breadth of his business and financial affairs.

177. The Defendant's interest in numerous business entities and the nature of his business interests obligates the Defendant to maintain adequate records of his financial condition and business transactions.

178. The limited documents produced by the Defendant are insufficient for the Plaintiff to determine the true state of the Defendant's financial condition, ascertain the Defendant's business transactions, and track any income or assets of the various Business Entities owned and controlled by the Defendant.

179. In light of the foregoing, the Defendant has either failed to maintain appropriate records of his financial condition and business transactions, or he is concealing the records that would enable the Plaintiff to ascertain the Defendant's financial condition and business transactions.

180. Given the Defendant's level of sophistication and experience in operating several businesses for over twenty years, his failure to either maintain or produce records that would enable the Plaintiff to ascertain the Defendant's financial condition and business transactions is not justified under the circumstances of this case.

181.    Wherefore, the U.S. Trustee respectfully requests that this Court enter judgment denying the Defendant's discharge under 11 U.S.C. § 727(a)(3) and providing for such other relief as is just.

## SECOND COUNT

### OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(5) FOR FAILURE TO EXPLAIN SATISFACTORILY ANY LOSS OF ASSETS OR DEFICIENCY OF ASSETS TO MEET DEFENDANT'S LIABILITIES

182.    The U.S. Trustee repeats and realleges each and every allegation contained in paragraphs 1 through 181 as if set forth herein at length.

183.    Pursuant to 11 U.S.C. § 727(a)(5), the Court may withhold a Defendant's discharge if "the Defendant has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the Defendant's liabilities."

184.    As stated above, the Defendant listed total assets on Schedule A/B in the amount of $162,920.07 comprised of real property in the amount of $112,500.00 and personal property in the amount of $50,420.07.

185.    The Defendant listed on Schedule A/B that he has an interest in twenty-three (23) business entities of which he is the 100 percent owner, and each business entity is reported as having no value as of the petition date.

186.    The Defendant listed non-priority general unsecured claims on Schedule E/F in the total amount of $2,755,209.74.

187.    In 2023, the Defendant sold the Ventnor Property to prevent the equity he had in the Ventnor Property from being available to his creditors.

188.    The Defendant sold the Ventnor Property to the purchaser and simultaneously executed a rental agreement pursuant to which he was allowed to remain in possession of the property in

exchange for the prepayment of rent for three years with the option to repurchase the property in the future.

189. The Defendant has failed to provide adequate records that adequately explains this transaction.

190. The Defendant also testified he received at least $175,000 in sales proceeds from the purchaser of the Ventnor Property and he failed to adequately explain the disposition of the proceeds he received in connection with the sale, which the Defendant states were converted to cash.

191. The Defendant, through his business Three Eye Research, LLC, for which he was the managing member and sole owner authorized the company to receive a $1,000,000 Small Business Administration Loan for which the Defendant has not produced business records and other documents which would explain the disposition of the loan proceeds.

192. The Defendant amended his Schedule I to identify he was employed by Letgo Healthcare, LLC, and he testified the owners of Letgo Healthcare, LLC, made monthly payments to his Venmo account, but with the exception of identifying the names of certain individuals, the Defendant has not produced any wage statements, payroll records, contracts or other documents which would substantiate the income and payroll deductions he reported on amended Schedule I.

193. The Defendant has not satisfactorily explained the deficiency in assets to meet his liabilities.

194. The Defendant has not satisfactorily explained why the income, inventory, or assets from the Business Entities is unavailable to distribute to creditors.

195. The Defendant claims that personal and business bank accounts for the Business Entities have been seized or closed, but he has not satisfactorily explained when, why, or by whom.

196.    The Defendant has not satisfactorily explained whether the Business entities owned any assets and what became of them.

197.    As a result, the Defendant failed to explain satisfactorily how all of the income and assets obtained by the Defendant and controlled through the Business Entities are unavailable to meet the Defendant's liabilities.

198.    Wherefore, the Plaintiff respectfully requests that this Court enter judgment denying the Defendants' discharge under 11 U.S.C. § 727(a)(5) and providing for such other relief as is just.

Respectfully submitted,


ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9


By:     /s/ Michael A. Artis
        Michael A. Artis
        Trial Attorney


Dated: May 18, 2026